**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-21832-CIV-MORENO/LOUIS

JENNIFER PRATHER,

      Plaintiff,

vs.

NCL BAHAMAS LTD.,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (ECF No. 53). This case has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, for a ruling on all pre-trial, non-dispositive matters (ECF No. 80). The Court held a hearing on the Motion for Summary Judgment on June 16, 2020; the Parties' motions *in limine* were also argued and decided at that hearing and the disposition of those motions are memorialized by separate Order. Upon consideration of the Motion, response, argument by counsel and being otherwise apprised, I respectfully recommend that Defendant's Motion be **GRANTED**.

**I.     BACKGROUND**

This is a maritime personal injury action brought by Plaintiff Jennifer Prather against Defendant NCL Bahamas, Ltd., seeking damages for injuries Plaintiff sustained when she slipped

and fell while aboard Defendant's cruise ship, the *Norwegian Sky* (ECF No. 1).[1]

On May 4, 2018, Plaintiff and her husband departed on a three-night cruise from Miami aboard the *Norwegian Sky*. On the last night of the voyage, Plaintiff and her husband visited the ship's casino on the seventh floor. At some point, Plaintiff visited the public restroom outside of the casino. She did not see any caution signs outside the restroom. Plaintiff entered the restroom, and immediately after opening the restroom door, her left foot slipped and Plaintiff fell, landing on her right knee. After falling, Plaintiff looked at the ground where she had slipped and saw that the area was covered in approximately one inch of a slippery wet substance, which she believed to be water that had leaked from an over-flowing toilet in one of the stalls in the restroom. Plaintiff noticed that her dress was wet from her thigh down. Plaintiff alleges that as a result of her fall, she suffered significant injuries to her knee.

At 1:41 AM, Defendant made a report of Plaintiff's fall, which she reported to the ship's Guest Services Desk (ECF No. 54–1). She reported that she had fallen in the Casino restroom, and that crew members working in the casino advised her to report the incident. Two hours later, Plaintiff called Guest Services and reported that her knee was swollen. Sometime after calling Guest Services, Plaintiff visited the ship's medical staff, where she received medical assistance (ECF No. 41–1, 115:10–16). After seeing the medic, Plaintiff returned to the restroom with a security crew member and this time Plaintiff saw two caution signs outside the restroom. Inside the restroom, Plaintiff saw there were puddles of a wet substance in multiple areas of the floor, however, Plaintiff does not know the source of the puddles or how long the puddles were on the restroom floor (ECF No. 41–1, 123:23–126:17). At 5:09 AM, the housekeeping night steward inspected the restroom at issue and noted that one of the toilets was clogged and there was a "little

---

[1] The facts are derived from Defendant and Plaintiff's respective Statement of Facts (ECF Nos. 54, 62) ("DSOF" and "PSOF") and are undisputed unless otherwise noted.

bit" of water near the toilet bowl (ECF No. 54–1).

NCL has a Restroom Inspection Policy that requires cleaning staff to inspect and mop the floors of all public restrooms in high trafficked areas every thirty minutes (ECF No. 61–4). NCL's Restroom Inspection Policy prevents passengers from getting hurt, especially in high trafficked restrooms, such as the one in which Plaintiff slipped; if NCL crew members fail to follow the policy, there is a higher risk of injuries to passengers (ECF No. 38–1, 31:8–32:21). NCL is aware that it is possible that a clogged toilet could cause water on the floor (ECF No. 38–1, 57:1–6). NCL warns passengers to take caution as the vessel decks could become wet in the ship's daily newsletter and in-cabin safety video warns passengers to be extra alert of water on the floor (ECF No. 38–1, 46).

Defendant preserved two 30-minute CCTV segments that were captured by the camera closest to the subject restroom, which show Plaintiff entering and exiting the door that leads to the casino restrooms on two occasions near the time of the reported incident. Because the camera is located outside of the bathroom and hallway, neither segment captures Plaintiff's fall. The first segment captures footage of the hallway between 11:51 PM on May 6, 2018 and 12:20 AM on May 7, 2018. The footage shows Plaintiff entering the restroom area through the door at 12:06 AM and exiting at 12:09 AM. The second segment runs from 2:40 AM to 3:10 AM on May 7, 2018, and depicts Plaintiff entering the restroom at 2:56 AM and exiting at 3:00 AM. The segments are 29 and 30 minutes long, respectively. No cleaning staff is seen entering the door to the restroom in either segment.

Ms. Prather's fall is not the first to have occurred on the ship as a result of water on a restroom floor as a result of an overflowing toilet. Within the year preceding Plaintiff's fall, NCL received one other report of a passenger slipping and falling in a different public restroom on the

3

*Norwegian Sky*. The passenger reported that the she had slipped in a wet substance coming from an overflowing toilet in the restroom, resulting in injury to her knee (ECF No. 61–5). Moreover, in the month preceding Plaintiff's accident, NCL received 9 reports of clogged toilets in the subject restroom (ECF No. 61–1).

### a. Procedural History

Plaintiff filed a one–count Complaint alleging a negligence claim against Defendant NCL. In the Complaint, Plaintiff alleges that NCL owed her a duty to exercise ordinary and reasonable care under the circumstances and that NCL had breached that duty of care by committing several acts or omissions relating to two dangerous conditions: the wet foreign substance on the restroom floor and the unreasonably slippery floor.[2]

NCL now moves for summary judgment on Plaintiff's negligence claim, arguing that Plaintiff has not provided evidence that NCL had actual or constructive notice of the alleged unreasonably slippery floor or water on the floor from an over flowing toilet in the subject public restroom (ECF No. 53). Specifically, Defendant contends that there is no evidence demonstrating it had knowledge that at the time of Plaintiff's fall, the floor in the restroom was wet, and challenges Plaintiff's ability to prove constructive notice because there is no evidence that the subject restroom was not cleaned pursuant to NCL's Restroom Inspection Policy.

Plaintiff opposes the Motion, arguing that there is a genuine dispute as to whether NCL had actual or constructive notice of a wet foreign substance on the floor of the subject restroom

---

[2] Plaintiff alleges NCL failed to: (1) keep and maintain the subject bathroom in a reasonably safe condition; (2) inspect and maintain the bathroom floor; (3) inspect and maintain toilets and plumbing system; (4) construct the subject bathroom in a reasonably safe manner; (5) exercise reasonable care in the selection of the flooring materials on the subject vessel; (6) provide reasonably slip-resistant floor; (7) warn Plaintiff of an unreasonably dangerous condition in the subject bathroom; (8) comply with applicable statutes, codes, and ordinances; (9) prevent bathroom from becoming unreasonably wet; (10) adopt and implement adequate policies and procedures; (11) abide its own policies and procedures; and by allowing: (12) an unreasonably dangerous bathroom to remain on the vessel; and (13) allowing an unreasonably dangerous toilet, plumbing system, and/or black and grey water system to remain on the vessel (ECF No. 1 ¶ 29).

and of the unreasonably slippery floor, noting that either theory of negligence is sufficient to withstand summary judgment (ECF No. 61). Plaintiff claims that NCL was aware that clogged toilets on the subject vessel could overflow and cause water to leak onto restroom floors, citing to 9 reported incidents of clogged toilets in the subject restroom, within thirty days prior to Plaintiff's fall; and one prior incident of a passenger slip and fall due to water overflowing from a toilet, albeit in a different restroom than where Plaintiff fell. Plaintiff also argues that NCL's constructive notice of water on the floor in the subject restroom is evidenced by its failure to follow its own Restroom Inspection Policy: though the policy is to clean public restrooms every thirty minutes, neither of the CCTV segments preserved by Defendant around the time of Plaintiff's fall show any employee entering to clean the restroom for either of those thirty-minute periods. Finally, Plaintiff advances evidence of reports of prior incidents of slip and falls that occurred on the vessel, which Plaintiff contends provide constructive notice to Defendant of the dangerous condition that was the unreasonably slippery flooring in the public restrooms.

In reply, NCL argues that the evidence of prior reports of clogged toilets do not establish constructive notice because none of those reports involved an overflowing toilet, much less a slip and fall resulting from the clog. Defendant similarly challenges Plaintiff's use of the prior report of a slip and fall as not substantially similar to her fall, because the prior incident occurred in a different restroom (ECF No. 67). NCL also argues that the CCTV segments do not prove that the inspection policy was not followed and that there is no evidence showing that its crew members did not follow the Restroom Inspection Policy. NCL also denies having actual or constructive notice of unreasonably slippery floor in the subject restroom, arguing that its warning to passengers in the daily newsletter and safety videos does not constitute notice of a dangerous condition in that restroom.

## II.   STANDARD OF REVIEW

### 1. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id*. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). The nonmoving party must support his assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean,* 285 F. Supp. 3d 1349, 1351 ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at *2 (S.D. Fla. Jan. 13, 2017). Summary judgment is proper "against a part who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id*. (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, the Court must evaluate the evidence and

make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*, 475 U.S. at 586-87.

### 2. Federal Maritime Law

Federal maritime law governs this dispute. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1235 (S.D. Fla. 2006) (concluding that torts arising on navigable waters are governed by federal maritime law). The Eleventh Circuit has held that general principles of negligence law apply in maritime tort cases. *Knickerbocker v. Bimini SuperFast Operations, LLC*, No. 13-24500-CIV, 2014 WL 12536981, at *4 (S.D. Fla. Nov. 21, 2014). To establish a successful negligence action, a plaintiff must show: (1) defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that the alleged breach was the actual and proximate cause of plaintiff's injuries; and (4) that plaintiff suffered damages. *Isbell*, 462 F. Supp. 2d at 1237; *Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992). The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence claim. *Id.*

The sole element raised by Defendant in this Motion is breach of duty, which requires as a prerequisite to imposing liability on a carrier, that the carrier have had actual or constructive notice of the condition that caused the alleged harm. *See Weiner v. Carnival Cruise Lines,* No. 11-CV-22516, 2012 WL 5199604, at *3 (S.D. Fla. Oct. 22, 2012). It is not enough that the carrier have knowledge that the condition existed, the carrier must also know that the condition is dangerous. *Id*.

A plaintiff can show actual notice by showing that the ship operator knew about the alleged

risk-creating condition. *Sutton*, 774 F. App'x at 511. In the absence of actual notice, a plaintiff can establish constructive notice by (1) presenting evidence that the risk–creating condition existed for a sufficient period of time to invite corrective measures; or (2) submitting "evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Id.; see also Marshall v. Royal Caribbean Cruises Ltd.,* No. 0:16-CV-21140, 2017 WL 5308902, at *6 (S.D. Fla. Jan. 6, 2017), *aff'd,* 706 F. App'x 620 (11th Cir. 2017).

### III. DISCUSSION

Plaintiff seeks to hold NCL liable on the theory that a wet substance from an overflowing toilet rendered the flooring in the subject restroom unreasonably slippery. NCL argues that summary judgment is proper because based on the record evidence, no reasonable jury could find that NCL had actual or constructive notice of the dangerous conditions alleged. In opposition Plaintiff argues that NCL had constructive notice because the wet substance was on the floor for a significant period of time such that NCL could have taken corrective measures and argues that NCL received notice of similar prior incidents such that NCL knew that clogged toilets and resulting liquid was an issue in the subject restroom. Plaintiff also argues that NCL had constructive notice of the dangerous condition because it violated its Restroom Inspection Policy, and had taken steps to warn passengers of wet decks on the vessel.

The undersigned agrees that NCL is entitled to summary judgment. Plaintiff has failed to adduce evidence that NCL had actual or constructive notice of the alleged wet substance or the unreasonably slippery floor in the subject restroom. Absent such, NCL cannot be held liable for Plaintiff's injuries.

8

1. **Constructive Notice**

    a. **Dangerous Conditions Did Not Exist for a Significant Period of Time**

Plaintiff may establish constructive notice by advancing evidence that the dangerous condition existed for such a length of time that to invite corrective measures. *See Francis v. MSC Cruises, S.A.,* No. 18-61463-CIV-BSS, 2019 WL 4247290, at *4 (S.D. Fla. Sept. 5, 2019). However, the mere presence of the substance on the floor is not sufficient; the record must have additional facts to create a permissible inference about the time foreign substance had been on the floor. *Cohen v. Carnival Corp.,* 945 F. Supp. 2d 1351, 1356 (S.D. Fla. 2013); *see also Garcia v. Target Corp.*, No. 12-20135-CIV, 2013 WL 12101087, at *2 (S.D. Fla. Feb. 26, 2013).

NCL argues that there is no evidence that the water was on the floor for any length of time, certainly not long enough to satisfy constructive notice. In opposition, Plaintiff argues that the jury may infer the length of time from the fact that the water was overflowing from the clogged toilet for so long that the water had time to get from the toilet to the door. Plaintiff further contends that the CCTV segments show that NCL crew members did not enter the subject restroom, and thus did not inspect or maintenance the restroom for at least those two thirty-minute segments during the night of her fall. Plaintiff argues that collectively, this evidence supports a reasonable inference that the wet substance was on the bathroom floor for a length of time sufficient to put NCL on constructive notice. The Court has carefully considered the evidence advanced and finds that the evidence is insufficient to support a reasonable inference that a wet substance was on the floor long enough to constitute constructive notice either of the wet substance on the floor or that the floor had become unreasonably slippery.

Taken in the light most favorable to Plaintiff, the competent evidence shows that at some

point between 12:00 AM and 1:40 AM[3] on May 7, 2018, Plaintiff slipped and fell on a wet substance on the floor of a public restroom outside the casino while aboard the *Norwegian Sky*. Plaintiff did not see the wet substance when she entered the restroom. When Plaintiff got up from the ground, she noticed her dress was wet from her thigh down. Plaintiff believed the liquid had come from a clogged toilet because immediately after falling, she saw a clogged toilet in the restroom that was filled to the brim, however, she testified that when she inspected the toilet it was not overflowing. (ECF No. 41–1, 96:25–97:1–9). NCL did not inspect or maintain the restroom between 11:51 PM on May 6, 2018 and 12:20 AM on May 7, 2018 or from 2:40 AM to 3:10 AM on May 7, 2018. Several hours after her fall, Plaintiff returned to the subject restroom with security officers and this time, there were warning signs outside the door leading to the restroom and upon inspection, Plaintiff noticed the floor was no longer "flooded" and instead there were "little puddles" in an unidentified area of the restroom floor. Plaintiff testified she did not know the source of the water that caused the smaller puddles or how long the small puddles had been on the ground (ECF No. 41–1 125:16–126:1–17).

While Plaintiff assumed that the wet substance she slipped in came from a clogged toilet, there is no evidence to support her assumption. Indeed, she testified that she did not see the water overflowing from the clogged toilet and further testified that when she entered the restroom earlier that evening she did not observe wet substances on the floor or clogged toilets (ECF No. 41–1, 81). Yet Plaintiff further assumes that the wet substance must have been there for a significant amount of time for it to have traveled from the toilet to the door of the restroom. The evidence advanced is insufficient to support a reasonable inference that the wet substance had been on the

---

[3] The parties dispute the time of the incident. Plaintiff contends that neither of the two segments of CCTV capture the moment following her fall. There is no dispute though that the fall occurred no earlier than the first segment, around midnight, and 1:40AM, the time her report is accepted by customer service.

restroom floor for a significant amount of time and accepting Plaintiff's assumption would require drawing a series of impermissible inferences that are unsupported by the record. *See Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1014 (11th Cir. 2019).

This case is analogous to *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp. 3d 1312, 1318 (S.D. Fla. 2016). Plaintiff alleged that he sustained injuries from slipping on an transient liquid on the vessel's dance floor. The Plaintiff argued that defendant had constructive knowledge of the liquid because the liquid had been on the floor for a significant amount of time, evidenced by his testimony that the liquid was cold when plaintiff slipped. The court rejected the plaintiff's argument that defendant had constructive notice of the dangerous condition because "Salazar testified that he did not know what the liquid was, he did not know how it got there, he did not know how long it had been there before he fell, and he did not know of a Norwegian crew member who was aware of the presence of the liquid on the floor prior to his fall." *Id.* at 1318. The court explained that without those specific facts, plaintiff's testimony regarding the temperature of the liquid did not give rise to a reasonable inference that the liquid had been on the floor for sufficient time to put defendant on notice. *See also Adams v. Carnival Corp.*, No. 08-22465-CIV, 2009 WL 4907547, at *5 (S.D. Fla. Sept. 29, 2009) (recognizing that without specific facts demonstrating that the purported defect was detectable with sufficient time to allow corrective action, the case cannot survive summary judgment); *Wish v. MSC Crociere S.A.*, No. 07-60980, 2008 WL 5137149, at *7-8 (S.D. Fla. 2008) (finding that absent a showing of how long water had been on the deck, the court could not determine that the water had been there an unreasonable amount of time so as to trigger constructive notice); *Palavicini v. Wal-Mart Stores E., L.P.*, No. 1:18-CV-20708, 2018 WL 5113947, at *3 (S.D. Fla. Aug. 22, 2018), *report and recommendation adopted sub nom. Palavicini v. Wal-Mart Stores E., LP*, No. 18-20708-CIV, 2018 WL 5098886

(S.D. Fla. Sept. 26, 2018), *aff'd*, 775 F. App'x 587 (11th Cir. 2019), *aff'd,* 787 F. App'x 1007 (11th Cir. 2019).

Nor does the CCTV footage, showing that NCL did not inspect or maintain the subject restroom for a significant period time, provide evidence that the substance was on the floor long enough to provide notice to NCL of the condition. Other than the fact that NCL employees are not shown entering for cleaning or inspection, the footage is unremarkable. Other guests are seen entering and departing the restroom entrance, without appearing wet, or in distress, or reacting in any manner consistent with having encountered a significant amount of water on the floor. The fact that no NCL employee inspected the restroom around the times immediately preceding her fall, alone, is insufficient to evidence that the substance was on the floor long enough to provide constructive notice. *See Gordon v. NCL (Bahamas) Ltd.,* No. 18-CV-22334, 2019 WL 1724140, at *5 (S.D. Fla. Apr. 15, 2019) (rejecting plaintiff's contention that defendant had notice of an unexpected liquid where CCTV footage depicted passengers and crew members walking without slipping or becoming aware of any water).

    **b. Substantial Similar Incidents**

The occurrence of substantially similarity incidents may be used to establish constructive notice in a maritime tort case. *See e.g. Taiariol v. MSC Crociere, S.A.*, 677 F. App'x 599, 601 (11th Cir. 2017). The substantial similarity doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015).

Plaintiff advances the following as evidence of prior similar incidents that put NCL on

notice of the dangerous conditions: (1) 9 clogged toilet reports[4] made within the 30 days before Plaintiff's accident; (2) the testimony of NCL's corporate representative acknowledging that it was possible that a clogged toilet could result in water overflowing onto the restroom floor, which NCL would consider dangerous; and (3) a report made within 1 year before Plaintiff's accident, reporting that a passenger slipped on a wet substance from an overflowing toilet in a similar restroom on the Norwegian Sky. Plaintiff argues that taken together, this evidence establishes constructive notice because NCL had knowledge of prior similar incidents.

The 9 reports of clogged toilets and the testimony of NCL's corporate representative do not demonstrate that NCL had constructive notice of the dangerous conditions. None of the 9 incidents were reported to have caused wet substances on the floor or injuries to passengers, and thus are not sufficiently similar to the circumstances surrounding Plaintiff's accident to impute notice on Defendant. *See Weiner*, 2012 WL 5199604, at *5 (S.D. Fla. Oct. 22, 2012). Plaintiff argues that even if those 9 incidents did not result in water on the floor, NCL had constructive notice of the danger because NCL acknowledged that clogged toilets could possibly lead to water on the floor. However, NCL's testimony acknowledging that clogged toilets *could* lead to water on the floor is insufficient to prove that NCL should have known, prior to Plaintiff's accident, that the toilets were clogging *and overflowing*, such that they were causing a dangerous condition that NCL had opportunity to correct. *Id.* at *4 (rejecting argument that defendant had constructive notice because it knew promenade decks could become wet and unreasonably slippery because even if accepted as true by the court, it would not show that defendant had notice of the danger at the specific site of the accident in that case); *see also Francis*, 2019 WL 4247290, at *4 (S.D. Fla.

---

[4] Plaintiff cited to 7 other incidents of slip and falls in different restrooms on the vessel. Defendant moved in limine to exclude the evidence as not sufficiently similar to establish notice. At the hearing on all motions, the undersigned granted the motion as to all but one prior incident.

Sept. 5, 2019) (denying the plaintiff's foreseeability argument that defendant had notice of the dangerous condition because defendant testified it had generally been aware that food spilled on decks could be a hazard).

Plaintiff also advances evidence of a prior incident to show that NCL had constructive notice of the dangerous conditions. With a year of Plaintiff's fall, a passenger reported slipping on a wet substance, which she believed to have come from an overflowing toilet, in another restroom on the *Norwegian Sky*. The conditions surrounding the incident were sufficiently similar to overcome Defendant's Motion *in limine* to exclude all evidence of prior incidents: the fall occurred in an interior restroom, near a restaurant (as opposed to outside on the pool deck), and was reported to have resulted from water flowing from a toilet. Notwithstanding those similarities, this isolated instance, which occurred in a different restroom and as a result of a different toilet, is insufficient evidence to establish constructive notice to NCL as it cannot be said that the slip and fall Plaintiff experienced occurred with enough frequency to impute constructive notice. *Salazar*, 188 F. Supp. at 1319.

Plaintiff relies on *Harnesk v. Carnival*, No. 87-2328-CIV, 1991 WL 329584, at *4 (S.D. Fla. Dec. 27, 1991), to argue that even one similar prior incident could establish constructive notice. However, *Harnesk* is distinguishable in that defendant had notice of another passenger slipping on the *same* coaming within *two days* of plaintiff's accident. Here, the passenger fell in a different restroom altogether ten months before Plaintiff's accident.

This case is more analogous to *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275 (11th Cir. 2015), where the Eleventh Circuit affirmed the district court's finding that 22 prior incidents were not sufficiently similar to establish constructive notice because none of them occurred where plaintiff fell, only three reported falling in the same substance as plaintiff and were factually

distinguishable as the passenger was wearing different shoes than plaintiff was when she fell. Likewise, in *LeRoux v. NCL (Bahamas), Ltd.*, No. 15-23095-CIV, 2017 WL 10410815, at *5 (S.D. Fla. July 31, 2017), the plaintiff alleged she had sustained injuries from tripping on a threshold in the metal door between the balcony and her cabin. *Id.* at *1. To establish notice, the plaintiff advanced a prior incident where a passenger caught his toe on a metal door in his cabin; there the court found that "the response regarding the passenger who 'caught his toe on a metal door' does not establish whether his foot also got stuck on the threshold, what time of day it was, whether he was under the influence of drugs or alcohol, or frankly any other particularized information that would allow this Court to determine whether the accident was "substantially similar" to Plaintiff's accident." *Id.* at *5.

Here too, the report of the prior passenger who slipped does not establish particularized facts about the incident such as what the other passenger was wearing, what area of the restroom she slipped in, whether that passenger was under the influence or any other specific information that would allow the Court to determine whether the accident was substantially similar to create a question of fact of NCL's notice. Accordingly, this incident does not serve to establish constructive notice.

### c. Warning Signs

Under some circumstances, warning signs may constitute proof of notice of a dangerous condition. *Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313, 1319 (S.D. Fla. 2019). For example, in *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018), the Eleventh Circuit held that a warning sign cautioning passengers of the dangerous condition alleged in plaintiff's complaint, could create a genuine issue of material fact regarding whether defendant had notice of the danger. But courts have found that not all signs constitute notice where the signs do not caution

of specific transitory dangers. *Tonelli*, 428 F. Supp. 3d at 1319.

Plaintiff argues that NCL had notice of the dangerous conditions because it warns passengers of the dangers of water on the floors of the vessel. Plaintiff relies on the daily newsletters warning passengers to "take special care" when walking around the ship and to "be aware of raised thresholds and wet decks," and on the in-cabin video which advises passengers to use caution in interior decks, and on NCL's testimony that it warns passengers of unexpected water on the deck during the muster drill. Even viewing the evidence in Plaintiff's favor, the generalized warnings of wet decks on the vessel are unrelated to the specific dangers Plaintiff alleges caused her accident, wet floors in the subject restroom, and thus do not constitute evidence of notice. *See e.g. Taiariol v. MSC Crociere, S.A.*, 677 F. App'x 599 (11th Cir. 2017) (recognizing that not all warning signs will be evidence of notice, there must also be a connection between the warning and the danger).

The circumstances here are more congruent with those in *Tonelli*, where plaintiffs, on behalf of their minor child, alleged that the child had suffered injuries from salmonella she contracted in the pool of defendant's vessel. *Tonelli*, 428 F. Supp. 3d at 1316. To establish constructive notice the plaintiff advanced evidence of a sign outside the pool warning "No children in diapers or who are not toilet trained." *Id*. at 1319. The court held that such sign did not constitute constructive notice of the specific dangerous condition, exposure to salmonella, suffered by plaintiffs' child. *Id*.

Plaintiff argues that *Frasca v. NCL (Bahamas), Ltd.,* 654 F. App'x 949, 953–54 (11th Cir. 2016), is instructive under the circumstances of this case. In *Frasca*, the Eleventh Circuit held that defendant's safety video which warned passengers that "outside decks will get wet from salt spray and sea air and can become very slippery," served as evidence of constructive notice that the

16

surface in question, exterior decks, could be slippery when wet. Here, the warnings in the record do not caution that the specific surface in question, the restroom floor, could become wet and slippery, rather the warnings caution passengers about the general fact that interior and exterior decks could become slippery when wet.

Relatedly Plaintiff argues that NCL had constructive knowledge of the dangerous conditions because it has a policy to place warning signs in the subject restroom when the floor is wet (ECF No. 61 at 20). Plaintiff relies on NCL's testimony that it considers wet substances on bathroom floors a dangerous condition and that when a floor is wet, NCL crew members are required to place signs warning passengers of the condition. However, simply having policies in place to prevent accidents does not make those accidents foreseeable and Plaintiff cannot rely on a foreseeability argument to establish constructive notice. *Peer v. Home Depot U.S.A., Inc.*, No. 2:11-CV-14356, 2012 WL 1453573, at *3 (S.D. Fla. Apr. 26, 2012).

### d. Restroom Inspection Policy

Plaintiff contends that NCL had constructive notice of the dangerous conditions because it failed to inspect the subject restroom every thirty minutes as required by NCL's Restroom Inspection Policy. Essentially, Plaintiff argues, notice should be imposed on NCL because if crew members had inspected and maintained the subject restroom every thirty minutes as required by the policy, Plaintiff would not have slipped over the wet substance (ECF No. 61 at 14). Plaintiff supports her argument with the two 30-minute CCTV segments which demonstrate that NCL crew members did not enter the subject restroom as required by the Restroom Inspection Policy. Plaintiff also cites to NCL's testimony that it was aware that wet substances on bathroom floors could cause injury to passengers and that the Restroom Inspection Policy aims to prevent injuries to passengers especially in high traffic areas, such as the subject restroom. Plaintiff's argument is unavailing to

the extent that she argues that constructive notice should be established simply because NCL failed to abide by its Restroom Inspection Policy thus creating the dangerous conditions. *See Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358–59 (11th Cir. 1990) (rejecting notion that a plaintiff need not show actual or constructive notice if evidence shows defendant created the dangerous condition)[5]; *see also Yusko v. NCL (Bahamas) Ltd.*, 424 F. Supp. 3d 1231, 1237 (S.D. Fla. 2020) (rejecting plaintiff's argument that notice of the dangerous condition is presumed where an injury is created by a defendant because actual or constructive notice of the dangerous condition is a prerequisite to imposing liability, regardless of a defendant's creation of the condition).

Moreover, looking at the evidence in the light most favorable to Plaintiff, the evidence shows at best that NCL did not inspect the subject bathroom in violation of its own policy despite its awareness that the inspection policy prevents accidents. Standing alone, the evidence is insufficient to generate a genuine issue of fact regarding whether NCL should have known that the dangerous conditions were present in the subject restroom at the time of Plaintiff's fall. Indeed, the general foreseeability theory has been rejected by courts in this Circuit because it would transform a carrier into an insurer of passenger safety. *See Weiner*, 2012 WL 5199604, at *4.

2. **Actual Notice**

Defendant further argues that it is entitled to summary judgment because the evidence does not establish that it had actual notice of the dangerous conditions. Plaintiff contends in opposition that NCL had actual notice as evidenced by the fact that after she fell NCL crew members placed warning signs outside of the subject restroom.

Taken in the light most favorable to Plaintiff, the evidence shows that at the time that

---

[5] Plaintiff alternatively argues that her negligent maintenance claim survives summary judgment as the evidence is clear that NCL failed to follow its Restroom Inspection Policy, and thus Plaintiff need not show the element of notice (ECF No. 61 at 15). The law is clear, however, that actual or constructive notice requirements applies to Plaintiff's negligent maintenance claim. *See LeRoux*, 2017 10410815 at *6 (citing *Everett*, 912 F.2d at 1359)).

18

Plaintiff fell there were no warning signs outside the subject restroom. When Plaintiff returned to the restroom with NCL security officers, she saw two warning signs outside the restroom. Plaintiff and the security officers entered the restroom and small puddles on the restroom floor. Plaintiff does not know whether the puddles were remnants of the substance she slipped or whether the puddles were caused by an overflowing toilet (ECF No. 41–1, 81:8–13, 99:19–25, 123:18–25). Plaintiff does not know the names of the security officers nor does she know how much time it had been since her accident when she returned to the restroom.

Plaintiff's testimony does not shed light on the question of whether NCL had actual notice of the dangerous conditions *before* Plaintiff's accident such that it would have time to take corrective measures. To the extent Plaintiff argues that NCL had notice of the dangerous condition because it placed caution signs outside the restroom after Plaintiff's accident, that argument is not persuasive as warning signs are considered evidence of notice where placement of the sign prior to an accident leads to the logical inference that defendant had knowledge of the danger. *See Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) (recognizing that a warning sign permits the logical inference that defendant knew of the dangerous condition because it shows that defendant had knowledge of the condition *before* plaintiff's accident); *see also Cohen v. Carnival Corp.,* 945 F. Supp. 2d 1351, 1356 (S.D. Fla. 2013) (rejecting plaintiff's argument that the placing of warning signs established constructive notice because that there was no evidence in the record that the signs were at the location where plaintiff fell *prior* to her accident and thus, it could not be inferred that defendant knew of the danger before).

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 53) be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 19th day of June 2020

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE